UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| KHEM BISSESSUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:07-cv-1290-SEB-WTL |
| vs. | ) | |
| | ) | |
| THE INDIANA UNIVERSITY BOARD OF | ) | |
| TRUSTEES, DR. RICHARD MEETZ in his | ) | |
| official and individual capacity, and KIPLY | ) | |
| DREW in her official and individual | ) | |
| capacity, | ) | |
| | | |
| Defendant. | | |

**ENTRY GRANTING DEFENDANTS' MOTION TO DISMISS**

This cause comes before the Court on the Motion to Dismiss [Docket No. 15] filed on December 2, 2007 by Defendants, The Indiana University Board of Trustees, Dr. Richard Meetz and Kiply Drew, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff, Khem Bissessur, brought this §1983 claim, challenging his dismissal as a graduate student from the Indiana University School of Optometry.  He alleges numerous acts by Defendants carried out with such bad faith as to have violated his rights under the Due Process and Equal Protection Clauses of the United States Constitution and to have constituted a breach of an implied contract under state law.  In the Motion to Dismiss, Defendants seek to dismiss all of Plaintiff's claims on two bases: that the claims are barred by the Eleventh Amendment and that the Complaint fails to state claims upon which relief may be granted.  For the reasons set out in this entry, we <u>GRANT</u>

Defendants' Motion to Dismiss.

## ***Factual Background***

Mr. Bissessur is a former graduate student enrolled at the Indiana University School of Optometry ("the University"), and the following account of the facts leading up to his expulsion are drawn from his Complaint. In December 2004, Defendant Dr. Meetz, a faculty member at the University, prevented Bissessur from taking a final exam, an action which allegedly resulted in Bissessur's receiving a grade of "Incomplete" for that course. Compl. ¶12. In the Spring of 2005, Plaintiff received a grade of D+ in two courses, which marks, he argues, were entirely arbitrary. Thereafter, Bissessur alleges, Dr. Meetz threatened him in response to his threat to file an official appeal of his grades with the University's Academic Fairness Committee. Compl. ¶¶14-16. Bissessur also was initially prevented from beginning clinical rotations, and, after being permitted to participate in rotations, he experienced further trouble when he received a failing grade in one rotation. That failure, in conjunction with the aforementioned problems, led finally to his dismissal from the University. Compl. ¶¶19-24. Bissessur alleges that during these rotations, he never received any academic feedback from the faculty beyond a single warning that because of his poor work he was going to receive a grade of D. Compl. ¶21. Apparently, on more than one occasion Bissessur attempted or threatened to challenge both his dismissal and his low marks. Compl. ¶18, 25. More generally, Bissessur alleges that, throughout this period, Defendants failed to communicate properly with him

regarding his academic status and that the faculty acted arbitrarily and with bad faith in all its dealings with him.

Bissessur asserts numerous constitutional violations arising from these facts. Count I as set out in Plaintiff's Complaint of October 5, 2007, asserts a claim for violations of the Fourteenth Amendment; Count II asserts a claim for breach of implied contract.  In their Motion to Dismiss of December 5, 2007, Defendants seek the dismissal of both counts of Plaintiff's Complaint.

## *Legal Analysis*

### *I. Standard of Review*

Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is proper when the Court determines that no cause of action is stated upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  All allegations in the Complaint must be taken as true.  Greene v. Finley, 749 F.2d 467 (7th Cir. 1984).  In assessing the sufficiency of a complaint that is challenged under Rule 12(b)(6), courts follow the fairly liberal "notice pleading" standard, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  A plaintiff's allegations must include the elements of the violation, and dismissal is proper if it appears that the plaintiff cannot prove any set of facts supporting his claim.  Ross v. Franzen, 777 F.2d 1216, 1219 (7th Cir. 1985); see also Hi-Life Prods. Co. v. American Home Prods. Corp., 11 F.3d 1402, 1405 (7th Cir. 1993).

## II. Eleventh Amendment Sovereign Immunity

The Eleventh Amendment grants sovereign immunity to the states, a protection grounded in principles of federalism and state autonomy.  Alden v. Maine, 527 U.S. 706, 709 (1999).  Based on the doctrine of sovereign immunity, States may not be sued unless they have waived the immunity or Congress has expressly abrogated the immunity.  See Green v. Mansour, 474 U.S. 63, 68 (1985).  Moreover, "qualified immunity," which we discuss in detail below, is available to government officials sued in their individual capacity to protect them "from civil suit based on their discretionary functions."  Burns v. Reed, 44 F.3d 524, 526 (7th Cir. 1995).

Because Plaintiff's claims in the case at bar assert violations of law by state officials, Defendants' Motion to Dismiss begins with the argument that these suits are barred under the Eleventh Amendment.  We address at the outset the issue of whether immunity bars the suits herein pled because the "privilege is an *immunity from suit* rather than a mere defense to liability . . . . [I]t is effectively lost if a case is erroneously permitted to go to trial." Saucier v. Katz, 533 U.S. 194 (2001) (emphasis in original).  The Supreme Court has therefore "stressed the importance of resolving immunity questions at the earliest possible stage . . . ." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

Defendants' Motion involves a clear application of immunity doctrine: Indiana has not consented to this kind of suit nor has Congress abrogated the sovereign immunity of the states in suits of this sort. Thus, it seems at first blush that Bissessur has little hope of

4

succeeding on his claim.  However, as Plaintiff points out, otherwise seemingly hopeless claims may sometimes survive sovereign immunity, pursuant to the holding in Ex Parte Young, 209 U.S. 123 (1908), wherein the Supreme Court permits the doctrine of sovereign immunity to be skirted when a state officer is named as the defendant, rather than the state itself, and the Complaint is based on a claim that the officer is engaged in ongoing violations of federal law.  Id. at 127-132.  Such a claim preserves the underlying rationale of sovereign immunity, namely that the state's coffers shall not be depleted by money damages awarded pursuant to a civil cause of action.  See Edelman v. Jordan, 415 U.S. 651, 677 (1974).  Therefore, a plaintiff proceeding pursuant to the Young exception to sovereign immunity is limited to a claim for prospective injunctive relief to protect the plaintiff against any further or ongoing violation of his federal rights.[1]  The key to determining whether the requested relief sought by a plaintiff is allowable under Ex Parte Young is to assess whether it is a claim for prospective or retrospective relief.  This is not always a straightforward determination, but it is easy to see in this case that Plaintiff's requested reinstatement and other related future injunctive relief constitute permissible remedies under Young, given their prospective character.[2]

---

[1]It should be noted that injunctive relief may include payment of attendant costs, without violating the "state treasury" notion of sovereign immunity, because they are deemed part and parcel of a grant of injunctive relief.  See Milliken v. Bradley, 433 U.S. 267, 289 (1977).

[2]Under Young, Plaintiff's requested relief falls within the exception to the doctrine of sovereign immunity in that he seeks prospective injunctive relief and an award of associated costs from Defendants in their official capacities as well as monetary damages against Defendants in their individual capacities.  Compl. at 5-7.

Sovereign immunity, therefore, does not provide Defendants with ironclad protection against all of Plaintiff's claims, though his claims against Indiana University are clearly barred because the University is the alter ego of the State and no exception to immunity applies.  See Woods v. Indiana Univ. And Purdue Univ. At Indianapolis, 996 F.2d 880, 883 (7th Cir. 1993).  Regarding the individually named Defendants, however, the doctrine of sovereign immunity does not automatically bar Plaintiff's claims.  Relief may be pursued against them in their official capacities under the Young doctrine, but only prospective relief including a claim to recover any related costs.  Furthermore, damages may be available against Dr. Meetz and Ms. Drew in their individual capacities, unless they are entitled to the protections of *qualified* immunity, to which we now turn in our discussion.

### III. Qualified Immunity

Qualified immunity is an affirmative defense to a Section 1983 constitutional tort claim against a government official who is being sued in his or her individual capacity. See Eversole v. Steele, 59 F.3d 710, 717 (7th Cir. 1995).  This shield from liability is "qualified" in the sense that it is available only "insofar as [the government official's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Marshall v. Allen, 984 F.2d 787, 791 (7th Cir. 1993) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  As with absolute immunity, the issue of qualified immunity is to be resolved at an early stage in a litigation

6

and, in assessing a complaint in this regard, "bare allegations of malice [ordinarily do] not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982).

Qualified immunity claims give rise to a two-part inquiry: "(1) whether the plaintiff has asserted a violation of a federal constitutional right, and (2) whether the constitutional standards implicated were clearly established at the time in question." Eversole, 59 F.3d at 717. As the discussion below makes clear, because continued enrollment in graduate education is not a constitutional right or otherwise guaranteed under federal law, such a claim cannot escape the protections of qualified immunity. This is true because no such federal right existed or was otherwise implicated.

The precise manner of applying the qualified immunity test is a matter in dispute between Plaintiff and Defendants, so some clarification by us is in order. The threshold question is this: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 200 (2001). A court must be careful not to "skip ahead to the question whether the law clearly established that the officer's conduct was unlawful . . . ." Id.[3] With regard to this threshold question, Plaintiff argues that Defendants violated his

---

[3]Plaintiff's argument advances prematurely to a consideration of the second question, incorrectly blending the two parts of the inquiry together by asserting that "the standard is not whether the courts have definitively made a ruling as to what is a property right" but instead "whether a reasonable person in Defendant's circumstances should have known" that a property right existed that he or she was violating. Pl.'s Resp. at 9. The temptation to mix the two parts of the inquiry is understandable because both parts of the test depend on a showing that a right has been established. Plaintiff's confusion of the two, however, yields an erroneous conclusion.

federal constitutional right to continued graduate education,[4] and his claim of the existence of this constitutional right rests on two propositions.

First, Plaintiff cites assumptions made by the Supreme Court and certain other courts in cases dealing with graduate school dismissals. While it is true that the Supreme Court has twice assumed for argument purposes that a right to continued graduate education exists, it has repeatedly declined specifically to hold as much. See Regents of the Univ. Of Michigan v. Ewing, 474 U.S. 214, 223 (1985); Board of Curators of the Univ. Of Missouri v. Horowitz, 435 U.S. 78, 84 (1978). Defendant–and to a great extent Plaintiff as well–recognize that the "opportunity to receive a post-secondary education from an accredited graduate school program . . . has not received . . . recognition" as a constitutional right. Galdikas v. Fagen, 342 F.3d 684 (7th Cir. 2003), overruled on other grounds by Spiegla v. Hull, 371 F.3d 928, 941-43 (7th Cir. 2004). However, Plaintiff urges us to treat the Supreme Court's assumptions as substantive and conclusive, which we shall not do because these assumptions clearly were utilized by the Court merely as tools of legal analysis and did not constitute an acknowledgment by the Court of a new constitutional right. Nor are we moved to extend these judicial assumptions on our own in order to conclude that such a right exists. The law simply does not support Plaintiff's conclusion.[5]

---

[4]No heightened pleading standard is involved with the burden of overcoming qualified immunity. See Triad Assocs, Inc. v. Robinson, 10 F.3d 492, 497 (7th Cir. 1993).

[5]The Supreme Court has clearly stated that education generally is not a fundamental
(continued...)

Plaintiff attempts to bolster his argument that his federal rights have been violated by asserting that the right was a "property right of continued education" protected by an implied contract with the University.  Pl.'s Resp. at 11.  He cites the proposition that "the relationship between a student and an educational institution is contractual in nature." Neel v. Ind. U. Bd. Of Trustees, 435 N.E.2d 607, 610 (Ind. 1982).  Defendants counter that, while something like a contract may have existed, Plaintiff has failed to allege any action by the University that constituted a breach.  Def.'s Reply at 6.  Pointing to Gordon v. Purdue University, 862 N.E.2d 1244 (Ind.Ct.App. 2007), Defendants argue, first, that Plaintiff failed to identify the promise that was breached and, second, that Plaintiff failed to plead bad faith on the part of Defendants.  Defendants are mistaken, however, in maintaining that Plaintiff has not alleged bad faith.  Plaintiff asserts various acts of capriciousness and arbitrariness, even threats against him.  Compl. ¶¶15-19.  In fact, he specifically alleges "bad faith."  Compl. ¶38.  Therefore, to some degree this case is distinguishable from Gordon.  Nevertheless, because Plaintiff has not alleged what, if any, promise was ever made to him or how it was breached, it is difficult to make out the specific right he claims was violated.

Assuming for the sake of argument that Plaintiff has defined the right implicated in this contract, it remains to be determined whether that right forms the basis for a claimed

---

[5](...continued)
right, a fact that informs our perspective regarding graduate education.  See San Antonio Independent School District v. Rodriguez, 411 U.S. 1 (1973); see also Williams v. Wendler, 530 F.3d 584 (7th Cir. 2008).

constitutional violation. According to Plaintiff, the contract created an entitlement to continued education, and dismissal constituted a deprivation of that property interest. Pl.'s Resp. at 13. This analysis is an uphill battle. The Supreme Court has held that, whether or not there is a contract, an entitlement does not exist without a reasonable expectation of continuing benefit. See Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972). Here, we cannot conclude that Plaintiff reasonably expected his assured continued education given his inadequate academic record. And, more generally, the Seventh Circuit has emphasized that a breach of contract by the state is usually only that, commenting that "[i]t would be absurd to turn every breach of contract by a state or municipality into a violation of the federal Constitution." Horwitz-Matthews, Inc. v. City of Chicago, 78 F.3d 1248, 1250 (7th Cir. 1996).

Any hope by Plaintiff of prevailing on his constitutional claim is completely dashed by the recent Seventh Circuit decision in Williams v. Wendler, which made clear that an entitlement not to be suspended from post-secondary education "is a matter of the contract, express or implied, between the student and the college." 530 F.3d 584, 588 (7th Cir. 2008) (internal citations omitted). Accordingly, whatever right Plaintiff possessed is predicated only upon the promise, if any, contained in the contract. Id. As in Williams, nothing in the facts alleged here indicates an implied or express promise made by Defendants assuring Plaintiff's continued enrollment. Dismissal on grounds of poor academic performance therefore violates no entitlement possessed by Plaintiff and does not rise to the level of a constitutional violation.

Defendants have properly asserted qualified immunity in this case.  Neither the Complaint nor any of the responsive briefs establish that a constitutional violation occurred.  Similarly, Plaintiff has failed to demonstrate that the law protecting the alleged right was sufficiently established to a degree such that Dr. Meetz, Ms. Drew, or the Board of Trustees should have known that, in terminating Plaintiff's enrollment, they were acting in violation of his constitutional rights.  Their conduct was in every respect rationally related to the performance of their discretionary functions.  Because Plaintiff has failed to overcome their claims of qualified immunity, Defendants are shielded from liability for money damages against them in their personal capacities.

This does not, however, fully resolve Plaintiff's claims.  Qualified immunity does not shield a defendant from claims for injunctive relief asserted against him in his official capacities.  Levenstein v. Salafsky, 414 F.3d 767, 772 (7th Cir. 2005); Akins v. Board of Governors of State Colleges and Universities, 840 F.2d 1371 (7th Cir. 1988) (overruled on other grounds at 488 U.S. 920 (1988)).  Although the deficiencies in Plaintiff's constitutional theories do not survive the qualified immunity defenses, his invocation of Ex Parte Young appears to rescue a significant part his claim, which we discuss below.

### IV. Procedural Due Process Claim

A procedural due process analysis proceeds in two steps: "The first step requires us to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due."  Doherty v. City of Chicago, 75 F.3d

318, 322 (7th Cir. 1996).

In our previous discussion on qualified immunity, we touched on the issue of whether Plaintiff here was deprived of a constitutional right, but we must revisit that issue in order to fully resolve whether Plaintiff can or has stated a claim upon which relief can be granted. An education of any type is, as Judge Posner recently characterized it, not property "in the usual sense of the word." Williams v. Wendler, 530 F.3d 584, 589 (7th Cir. 2008). But clearly there are property interests "not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings . . . that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972). Plaintiff's alleged property right appears to be of this latter type, but his claim is nonetheless unsupported by any existing rules or understandings.

Judge Posner detailed the difficulties with a claim like the one before us here:

> The plaintiffs' problem in this case . . . is that they premise the claim entirely on the bald assertion that any student who is suspended from college has suffered a deprivation of constitutional property. That cannot be right. And not only because it would imply that a student who flunked out would have a right to a trial type hearing on whether his tests and papers were graded correctly . . . but also because the Supreme Court requires more.

Williams, 530 F.3d at 589. The "more" required by the Court is "proof of an entitlement." Id. Here, Plaintiff has been able to bolster his claim to a greater extent than the plaintiffs in Williams, both by alleging arbitrariness as the basis of his dismissal and by attempting to establish that his entitlement was based on an implied contract with the

12

school.

Unfortunately, even with these additional gildings of the lily, Plaintiff's interest does not rise to the level that is entitled to constitutional protection. As mentioned above, the claimed entitlement is not supported by relevant case law, despite Supreme Court "assumptions" of the right to continuing graduate education. And, if his contract with Defendants had contained an exchange of promises– for example, a provision stating that in exchange for Plaintiff's payment of tuition, the University would not dismiss Plaintiff absent egregious non-academic conduct–his property interest would be on stronger footing. But no such provision, implied or express, exists in this case. Therefore, Plaintiff's contract theory does not rescue his constitutional deprivation claim, so his procedural due process claim fails on the first prong of the two-part analysis.

We turn now to a review of the process Plaintiff did receive with regard to his expulsion, even though his underlying claim is foreclosed by the absence of a protected right. Plaintiff alleges a failure of process based on his having been given no more than barebones notice of his impending failing grades and because he was never given a full opportunity to address his problems. He has not identified any specific standards that the University or the individual Defendants neglected to undertake but contests that Defendants' conduct departed from the University's "established norms."

An analysis of whether Defendants provided sufficient process comes generally

13

under the Mathews v. Eldridge rubric.[6]  The Supreme Court, applying Mathews, has said

that the process required in an education context is nothing more than an informal "give

and take" that provides the student with the "opportunity to characterize his conduct."

Board of Curators of University of Missouri v. Horowitz, 435 U.S. 78, 85 (1978) (citing

Goss v. Lopez, 419 U.S. 565, 584 (1975)).  Moreover, with regard to a dismissal in the

graduate school context, the Court has said that "far less stringent procedural

requirements" are needed in the case of an academic dismissal than in one involving a

violation of a code of conduct. Id. at 86.  Expressly applying Mathews, the Horowitz

Court stated that a school has an "historically supported interest . . . in preserving its

present framework for academic evaluations" and therefore "a hearing is not required by

the Due Process Clause of the Fourteenth Amendment" when a student is dismissed on

academic grounds.  Horowitz, 435 U.S. at 86 n.3.

Plaintiff urges us to distinguish his case from Horowitz on the ground that

Horowitz received a more extensive processing than he did.  On the facts alleged,

Plaintiff arguably did receive less "process" than did Horowitz, particularly since it is

unclear from the Complaint what he meant by the allegation that he "attempted to

challenge" his dismissal–does that mean he never actually challenged his grades and

---

[6]Mathews v. Eldridge, 424 U.S. 319 (1976), is the hallmark ruling on procedural due process, directing lower courts to balance the interests of the plaintiff and defendant.  Under Mathews, a reviewing court looks at the nature of the claimed interest, analyzes the risk of an erroneous deprivation under the procedures afforded, and assesses the government's interest in maintaining the current procedures.  See Halfhill v. Northeast School Corp., 472 F.3d 496, 502 (7th Cir. 2006).  Mathews provides a test of flexible and general applicability, while other precedents applying Mathews provide clear direction in cases of academic dismissal.

dismissal or that he challenged them unsuccessfully?

Regardless of the specific deficiencies in terms of the process he received, however, Plaintiff's procedural due process claim fails because he is unable to establish a constitutional deprivation of property.  Moreover, as the holding in <u>Horowitz</u> makes clear and as Defendant's Motion contends, "[T]he determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision-making." <u>Horowitz</u>, 435 U.S. at 90.  Plaintiff in the case before us has failed in his attempt to plead a violation of his procedural due process rights.  Count I of his Complaint therefore must be dismissed for failure to state a claim.


***V. Substantive Due Process Claim***

Substantive due process protects citizens from the arbitrary exercise of government power. When a plaintiff asserts that a government official has violated his right to substantive due process, a reviewing court must ask whether the official has abused his power in a way that "shocks the conscience."  <u>Rochin v. California</u>, 342 U.S. 165 (1952). Because of this demanding standard, the "scope of substantive due process is very limited."  <u>Tun v. Whitticker</u>, 398 F.3d 899, 902 (7th Cir. 2005).  As the Seventh Circuit held in <u>Tun</u>, "It is one thing to say that officials acted badly, even tortiously, but–and this is the essential point–it is quite another to say that their actions rise to the level of a constitutional violation."  <u>Id.</u> at 903.

Plaintiff is correct in asserting that a determination of whether something shocks the conscience is a factual inquiry and that our review of his Complaint must afford him the benefit of all reasonable inferences.  It is clear enough, however, that he cannot prove any set of facts to establish a "shock-the-conscience" claim in the context of an academic dismissal supported by repeated poor academic performance.  <u>Tun</u> describes the limits of substantive due process in this area: "It is not the role of federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." <u>Id.</u>

Plaintiff's substantive due process interest, it should be noted, is grounded in the same principles as the other interests discussed in beginning sections of this entry.  Having identified the weaknesses in those theories, it is useful at this point merely to highlight that, when a claimed violation of substantive due process has as its foundation the deprivation of a state-created property interest–to wit, the implied contract interest asserted here–a plaintiff faces additional obstacles in successfully framing a cause of action.  He must show (1) that the state actor's conduct was arbitrary and irrational, and (2) that the state actor committed a separate constitutional violation or that state law remedies are inadequate." <u>See Centres, Inc. v. Town of Brookfield</u>, 148 F.3d 699, 704 (7th Cir. 1998).  Here, Plaintiff has been unable to demonstrate any separate constitutional violation, and further, he has neither alleged nor established that state contract law remedies are inadequate.  For all of the foregoing reasons, Plaintiff's claim under Count I for a violation of substantive due process must also be dismissed.

16

## VI. Equal Protection Claim

To state a claim under the Equal Protection clause of the Fourteenth Amendment, a plaintiff must allege "membership in a protected class that has been singled out for unequal treatment by the government."  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432 (1985).  Separating this rule into its constituent parts, a plaintiff must show: (1) that he is a member of a protected class; (2) that he is otherwise similarly situated to members of an unprotected class; (3) that he was treated differently from members of the unprotected class; and (4) that the defendants acted with discriminatory intent.  McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993) (quoting McMillian v. Svetanoff, 878 F.2d 186, 189 (7th Cir. 1989)).  In this case, Plaintiff alleges that he is a member of a "class of one." See Village of Willowbrook v. Olech, 528 U.S. 562 (2000).  To maintain an equal protection claim as a class of one, a plaintiff must allege that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Id. at 564; see also Engquist v. Oregon Dept. Of Agr., 128 S.Ct. 2146, 2150 (2008) (holding that "the class-of-one theory of equal protection does not apply in the public employment context").

The pleading standard for a claim such as this is a heightened one under Seventh Circuit precedent.  Fed. R. Civ. P. Rule 8(a); Wroblewski v. City of Washburn, 965 F.2d 452 (7th Cir. 1992); see also Erickson v. Pardus, 127 S.Ct. 2197 (2007).  The standard incorporates rational basis review into the normal notice pleading standard: "To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to

overcome the presumption of rationality that applies to government classifications."
Wroblewski, 965 F.2d at 460.  Plaintiff urges that we disregard the controlling
Wroblewski precedent, arguing that it erroneously burdens plaintiffs and conflicts with
precedents from other jurisdictions.  Disregarding controlling precedent we cannot do.
Accordingly, we shall assess Plaintiff's claim under the Seventh Circuit holdings,
notwithstanding Plaintiff's laundry list of related precedent to the contrary from other
jurisdictions.

Under the heightened pleading standard set out in Wroblewski, Plaintiff's Equal
Protection claim clearly falters.  He has failed to point to others similarly situated; he has
failed to show differing treatment; and he has failed to demonstrate any discriminatory
intent on the part of the University. Beyond failing to satisfy these requirements,
Plaintiff's claim falters under class-of-one jurisprudence.  As the Supreme Court in
Engquist v. Oregon Dept. Of Agr. stated,

> There are some forms of state action . . . which by their nature involve
> discretionary decisionmaking based on a vast array of subjective, individualized
> assessments.  In such cases the rule that people should be "treated alike, under like
> circumstances and conditions" is not violated when one person is treated
> differently from others, because treating like individuals differently is an accepted
> consequence of the discretion granted.

Id. at 2154.  The Supreme Court's reasoning applies to the facts before us here and
dictates that Plaintiff's class-of-one claim is unavailing.[7]  The Court also observed,

---

[7]We are aware that the Court was discussing this principle in the employment context,
but the rationale applies equally here.

18

"[W]hen it appears that an individual is being singled out by the government . . . the Equal Protection Clause requires a 'rational basis for the difference in treatment.'" Engquist, 128 S.Ct. At 2153 (quoting Olech, 528 U.S. at 564).  Bissessur's Equal Protection claim is inadequate because he cannot escape the fact that receiving an F on a clinical rotation which was an essential part of his academic preparation for the medical profession is a rational basis for his or anyone else's dismissal from the academic program.   The Supreme Court's rationale in Engquist effectively forecloses his claim.  In light of Plaintiff's failure to overcome the heightened pleading requirements and the Supreme Court's recent limitation on the availability of class of one claims in the context of discretionary decision making, Count I of Plaintiff's Complaint must be dismissed for failure to state an equal protection violation.


### VII. Breach of Implied Contract Claim

Count II of Plaintiff's Complaint asserts that Defendants breached an implied contract with him when he was dismissed.  "It is held generally in the United States that the basic legal relation between a student and a private university or college is contractual in nature."  Ross v. Creighton University, 957 F.2d 410, 416 (7th Cir. 1992) (internal citations omitted).  This proposition also applies with regard to the relationship between a student and a public university.  See Peretti v. State of Montana, 464 F.Supp. 784, 786 (D. Mont. 1979) (rev'd on other grounds, Montana v. Peretti, 661 F.2d 756 (9th Cir. 1981)); Gordon v. Purdue University, 862 N.E.2d 1244, 1248 (Ind.Ct.App 2007)

(extending the proposition to a relationship between Purdue, a public school, and one of its students and noting generally that "there is a contractual relationship between student and school."). This relationship "confers duties upon both parties which cannot be arbitrarily disregarded and may be judicially enforced." Ross, 957 F.2d at 416 (citations omitted). To state a claim for breach of contract in the student-college context, a plaintiff "must point to an identifiable contractual promise that the defendant failed to honor," for example, "if the defendant took tuition money and then provided no education, or alternately, promised a set number of hours of instruction and then failed to deliver." Id. at 416-17. The "essence," therefore, of a breach of implied contract claim in this context is that "the institution failed to perform [a promised educational] service at all." Id.

The key to determining whether such a claim is judicially enforceable is whether it would "require an inquiry into the nuances of educational processes" or whether it presents "an objective assessment of whether the institution made a good faith effort to perform on its promise." Id. In Ross v. Creighton University, the Seventh Circuit found that the determination of whether Plaintiff Ross was barred from any and all aspects of the University academic program was properly cognizable. In contrast, courts are not competent to hear claims that involve "second-guessing the professional judgment of the University faculty on academic matters." Id.

Plaintiff's claim before us here fits into this latter category. The wrongs that he alleges constituted a breach of contract relate entirely to the faculty's assignment of grades and the University's decision to expel him for poor academic performance. These

20

are, by their essence, matters confined to the professional judgment of the University's faculty and are not within the authority of a Court to review, barring outrageous conduct which rises to the level of a constitutional violation and clearly has not been shown to have occurred in Plaintiff's case.  Plaintiff's claim for breach of implied contract therefore warrants dismissal as well.  We note that this conclusion finds support under Indiana law as well, which draws heavily on the analysis in <u>Ross</u>: "To state a claim for breach of contract, the Plaintiff . . . must point to an identifiable contractual promise that the Defendant failed to honor . . . ." <u>Gordon</u>, 862 N.E.2d at 1248 (quoting <u>Ross</u>, 957 F.2d at 416).  The only form of judicial involvement deemed appropriate under Indiana law is "an objective assessment of whether the institution made a good faith effort to perform on its promise." <u>Id.</u> (quoting <u>Ross</u>, 957 F.2d at 417).  Under both federal and state law, therefore, Count II of Plaintiff's Complaint fails to state a claim for breach of an implied contract by Defendants.

### VIII.   Conclusion

For the reasons stated, we hold that Plaintiff's claim against Indiana University is barred by Eleventh Amendment sovereign immunity and that all of the individually named Defendants are entitled to qualified immunity from Plaintiff's damages claims. With respect to his claim for injunctive relief, Plaintiff has failed to identify the constitutionally protected property interest necessary to establish a Due Process claim under the Fourteenth Amendment and has failed as well to properly assert an Equal

Protection claim.  Finally, Plaintiff has failed to establish Defendants' failure to perform an identifiable promise, which is an essential element of a claim for breach of an implied contract.  Accordingly, Defendant's Motion to Dismiss is <u>GRANTED</u> in all respects. Final judgment shall be enter accordingly.

      IT IS SO ORDERED.


Date: _____09/10/2008_____

                                      _____

                                      SARAH EVANS BARKER, JUDGE
Copies to:
                                      United States District Court
                                      Southern District of Indiana

Cory Stephen Brundage
cb@brundagelaw.com

Kenneth E. Lauter
HASKIN LAUTER  & LARUE
klauter@hlllaw.com

Ryan Patrick Sink
HASKIN LAUTER & LARUE
rsink@hlllaw.com

22